(24 Misc. Rep. 425.)

PEOPLE ex rel. ROCKEFELLER v. HAIGHT et al.

(Supreme Court, Special Term, Dutchess County. August, 1898.)

1. TAXATION—REVIEW OF ASSESSMENT—REFERENCE.

A referee to whom the question of the value of lands for assessment for taxes was submitted on certiorari for review found that the assessment roll was illegal, but found no fact showing its illegality. The assessors admitted the illegality, and asked that the whole tax be stricken from the roll. *Held,* that the assessors had no power to consent to the illegality, and the tax, for the purposes of the writ, would be deemed valid.

2. SAME—UNEQUAL ASSESSMENTS—REFERENCE.

A referee found that the valuation of lands on an assessment roll for taxes was unequal, but found no fact to enable the court to correct the inequality. *Held,* that the roll would stand as it was, so far as affected by such objection.

3. SAME—REVIEW OF ASSESSMENT—EVIDENCE.

In a proceeding on certiorari to review an assessment, a witness testified as to the cost of a portion of the improvements on his real estate, and also that he was not acquainted with the cost of the remainder of the improvements. He was asked if the entire property was worth a certain amount. The question was rejected. *Held* not erroneous, since, if the witness did not know the cost, he could not state if the improvements increased the value as much as the cost.

4. SAME—VALUATION OF PROPERTY—EVIDENCE.

On a hearing by a referee as to the whole value of property for taxation, proof was offered as to the value of plumbing in a building, with an offer to prove the value of separate portions of the structure. *Held* that, the entire value having been shown, proof as to the value of component parts was improper.

5. SAME—MALICIOUS ASSESSMENT.

An assessment of property for taxation was placed at an extravagant amount. It was shown that the assessor had said that he would drive the owner from the town, by putting an unequal burden on him, and making his life unpleasant. *Held* sufficient to support a finding that the assessment was maliciously made.

Proceeding by William Rockefeller against David Haight and others by certiorari to review an assessment of property for taxation. Report of referee affirmed.

Howard H. Morse (Henry T. Dykman, of counsel), for relator.
Frank V. Millard, for respondents.

BARNARD, J. The relator owns real estate in the town of Mount Pleasant, Westchester county. His property in 1897 was assessed in that town, and he obtained a writ of certiorari under the tax laws to review the assessment, and claims that his lands were overvalued, and that the valuation was unequal and unjust, as compared with the valuation of other property in the town on the same roll. The referee to whom the question was committed has found that the relator was a nonresident of the town. He has also found that the roll was not prepared in the manner and form prescribed by law, and is illegal. No fact is found showing the illegality, but the counsel for the assessors admits the illegality, and wishes the whole tax stricken from the roll. I think no case is made for such a step, and that the assessors have no power to assent thereto. If the tax is void because the assessors had no jurisdiction to make this particular tax in the way it was made, no legal collection of the tax can be made. For the purposes of this writ, I deem the tax legal and valid.

There is a finding that the valuations of land on the roll are unequal, and that the same injuriously affect the relator's assessment. No fact is found to enable a court to correct an inequality. The evidence shows great inequality. The tax per acre on other lands in the town is put on a valuation of $300 per acre, while the relator's is valued at $3,000 per acre; but the finding is too general to base a correction upon, and the roll will stand, so far as it is affected by this objection.

The sole question remaining is as to the actual value of the property. The property is made up of 12 pieces, containing in all 630 acres, about. While the pieces are assessed in parcels, they were all bought by the relator as one parcel, and are used by him as one residence. The land was in 1887 owned by the successor in title of William H. Aspinwall. It was a full and costly residence for Mr. Aspinwall in his lifetime, and for his family after his death. There were two fully-equipped stone mansions upon it. There was a barn and stable, and other appliances which are usual in a residence of a very wealthy man. The relator bought this land, with all the buildings, with the furniture remaining in the house, and all the property used about the large tract of land, for $150,000. The new purchaser tore down the two mansions. The barn burned down, and thus he was reduced to the land itself as a taxable property. A large part of the land was, and still is, in an entirely wild state, rough, rocky, hilly, and marshy, with not much land used for cultivation. The evidence does not disclose the value of this land separate from the buildings at the time of the relator's purchase. The relator built on the premises a new house, a new barn, an electric plant to light the house, and in fact everything new which make up a country mansion for a person of large wealth. When completed, it was assessed at

$122,000 in 1895. The next year it was raised to $1,023,482.50, to indicate a value of 40 per cent. of the real value. The next year (the one in question) the assessment was increased $2\frac{1}{2}$ times, to reach the real value of $2,500,000, altered on grievance day to $2,185,555. Was the inquiry as to the value improperly restricted? The relator was a witness. He gave evidence tending to show that the house cost $94,000, and the barn $50,000. He was not acquainted with the cost of the other structures, and he was asked by the assessor's counsel, "Was it worth what it cost?" After some discussion the counsel stated as follows: "I don't ask what it is worth. ＊ ＊ ＊ He don't know the cost. ＊ ＊ ＊ I ask him if it is worth this amount." The question in this form was properly rejected. If the witness did not know the cost, he could not say if it increased the value of the real estate as much as it cost. The relator was precluded by the respondents' objection from testifying as to the value of the property as it stood, but he cannot raise the point now. Proof was offered by the respondents as to the value of the plumbing in the house, with an offer to prove the value of the different separate portions of the structures. This was rejected. Proof had been given tending to show the cost of the completed separate buildings to the respondents, and the value of the property as an entirety. It was fairly within the province of the referee to limit the inquiry. At best, the evidence was not of controlling importance, unless the value of the structure was shown by the evidence, and no case goes further than to hold that the cost is to be taken into account in fixing the value. This value is sworn to by many witnesses, and a minute inquiry as to the cost or value of the several component parts of each structure was properly arrested. What was the value of the property in July, 1897? Upon this question, apart from the relator himself, there were produced four witnesses by him, who established the market value in the usual way taken in courts of justice. Each witness was acquainted with the value of such places, and each had large experience in the business of buying and selling such lands for others as brokers. The highest value placed upon it was $338,887.50. The others were a few thousand less. There were called by the respondents upon the question of value two witnesses, who were also qualified to value lands. from experience acquired in a similar way. They also were brokers to buy and sell for others. One of these witnesses places the value of the land at the amount of the assessment. To reach this result he placed the value of $1,835,000 on the residence, and upon the barn property he placed a value of $239,500. The great discrepancy between the relator's witnesses and this witness is on these two pieces. The contract price of the mansion was to the mason $94,000, and to the carpenter about $15,000. Work was done outside of the contract. The amount of this does not appear, but there is no evidence to sustain a finding that the entire house cost any considerable sum over the contract price. The same view can be taken of the barn property. The contract price was $42,000, and the carpenter work there about $27,000. The land valued with the house is 85 acres, and that valued with the barn is 93 acres. A value of $2,074,500 upon the two pieces is entirely incredible, under the evidence. It is not

justified by the value of the land as proven, or the value of the buildings on it. The estimate does not harmonize with the evidence of any of the witnesses in the case. It fails to agree with the valuation he placed upon the same land the preceding year, which is less than one-half of the present assessment. The only other witness called by the assessors places the value of the entire property at $962,400. This was based upon a valuation of the land alone at $414,650. The proof shows that the value of the land in that vicinity has not changed, and the finding of its value at this large sum is not warranted by the price actually paid for it after long efforts to sell, and after the attention of persons able to buy, and who wanted to make a home, had been called to it, and they had refused to buy at any greater sum than the $150,000 paid by the relator. The estimate of this witness on the buildings is unsupported by the evidence. No such cost is proven, or inferable, even, from the evidence given. It is not very material, because the true rule is to get the market value of the property as a whole. The cost is to be considered in getting at the value, and the estimate of the entire value of the property by this witness at $932,400 is extravagant, and unwarranted by the evidence. The report of the referee is therefore confirmed as to the value placed by him upon the property assessed.

There is one other question remaining, which is upon the finding that one of the assessors was influenced by malice in making the assessment. The evidence clearly established the fact. An assessor is elected in 1896. The Rockefeller land is in his subdistrict in the initiation of the assessment. The old assessment was $122,000. He examines the house fully. He sends an expert to aid him. The expert makes his estimate, and the property is put on the books at $1,000,000. The next year this amount is made $2\frac{1}{2}$ times larger, and reduced only a small sum on grievance day. Why is this? if I understand the excuse, it is that the old assessment was brought up by the $1,000,000 assessment to 40 per cent. of its value. The assessor made oath that the new assessment was full value then. It now appears that the old assessment must have been only 5 per cent. of the value, to justify this assessment. It is incredible that the original assessors so under oath assessed the property. From this alone a great disturbance in the assessor's judgment is established. Quite a number of witnesses give the cause of the disturbance. The assessor is proven to have asked for votes in his favor because he, if elected, would put the tax on the relator and relieve the poor. He is proven to have said that he would drive the relator from the town, by putting an unequal burden on him, and by making his life unpleasant to him there. That evidence entirely supports the inference which would be made without it. I find that the assessment was maliciously made only so far as affects the one assessor. The referee has put no costs on him, and the affirmance will be made as to the whole of his report. Ordered accordingly.